**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES P. ELLIS,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No.: 2:25-cv-642** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **OHIO DEPARTMENT OF** | : | **Magistrate Judge Chelsey M. Vascura** |
| **REHABILITATION AND** | : | |
| **CORRECTION,** | : | |
| | : | |
| **Defendants.** | : | |

**<u>OPINION & ORDER</u>**

Before this Court are the Magistrate Judge's Report and Recommendation ("R&R") (ECF

No. 16), Plaintiff's Objection to the R&R (ECF No. 24), and the following motions:

- Plaintiff's Motion for a Temporary Restraining Order (ECF No. 2);

- Plaintiff's Motion for a Preliminary Injunction (ECF No. 3);

- Plaintiff's Motion to Appoint Counsel (ECF No. 5);

- Plaintiff's Motion for Immediate Release (ECF No. 7);

- Plaintiff's Motion for a Status Update (ECF No. 14);

- Plaintiff's Supplemental Declaration and Motion for Emergency Relief (ECF No. 19);

- Plaintiff's Motion for Equitable Relief (ECF No. 21);

- Plaintiff's Motion to Toll the Statute of Limitations (ECF No. 25);

- Plaintiff's Motion to Compel Production (ECF No. 26);

- Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 27);

- Plaintiff's Motion for a Status Update (ECF No. 28);

1

- Plaintiff's Motion for Leave to Refile Civil Rule 8(A) Statement (ECF No. 29);

- Plaintiff's Emergency Motion to Appoint Counsel (ECF No. 30);

- Plaintiff's Motion to Confirm Acceptance of Amended Complaint (ECF No. 31);

- Plaintiff's Motion to Preserve Right to Amend Complaint to Add Defendants Upon Discovery (ECF No. 32); and

- Plaintiff's Motion to Accept and Recognize Amended Complaint as Operative Pleading (ECF No. 34).

For the following reasons, Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (ECF No. 24) are **OVERRULED,** and this Court **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 16). Plaintiff's Motion for Leave to Amend the Complaint (ECF No. 27) is **GRANTED.** Additionally, Plaintiff's Motion for Emergency Relief (ECF No. 19) is **DENIED.** Plaintiff's remaining Motions (ECF Nos. 2, 3, 5, 7, 14, 21, 25, 26, 28, 29, 30, 31, 32, 34) are **DENIED as Moot.**

## I.    BACKGROUND

James Ellis is an inmate currently incarcerated with the Ohio Department of Rehabilitation and Correction ("ODRC"). On May 17, 1995, Mr. Ellis was convicted of aggravated murder and aggravated burglary and received the following sentence:

> to be imprisoned in Department of Corrections for a period of LIFE IMPRISONMENT IN COUNT #3 [aggravated murder] AND TEN (10) YEARS TO A MAXIMUM OF TWENTY-FIVE (25) YEARS WITH TEN (10) YEARS ACTUAL INCARCERATION IN COUNT #4 [aggravated burglary] TO RUN CONSECUTIVELY TO COUNT #3 WITH CREDIT OF TWO HUNDRED NINETY-SIX (296) DAYS GIVEN FOR TIME SERVED.

(ECF No. 16 at 5). On May 27, 2015, a parole board first considered Mr. Ellis's eligibility for parole, ultimately denying him parole and scheduling the next hearing for 2025. (ECF No. 16 at 5). The Decision and Minutes for the 2015 hearing listed Mr. Ellis's "[a]ggregate sentence per Journal

Entry" as "30 to Life." (ECF Nos. 16 at 5; 1 at Exhibit "Decision and Minutes 5/27/2015"). Likewise, at a second parole hearing on February 18, 2025, the board denied Mr. Ellis parole and scheduled his next hearing for 2028. (ECF No. 16 at 5). Again, the Decision and Minutes for the second hearing listed his aggregate sentence as "30.00–Life." (ECF Nos. 16 at 5; 1 at Exhibit "Decision and Minutes 2/18/2025").

Along with these two Decisions and Minutes, Mr. Ellis received a letter on October 30, 2018, from the Ohio Bureau of Sentencing Computation ("BOSC") also listing his sentence as 30 to life. (ECF No. 16 at 5). BOSC explained that "[u]nder the Ohio Revised Code on 3/31/1995, a 'Life' term for the offense on count 3 was 20-years." (ECF No. 1-1 at Exhibit "October 30, 2018 BOSC Letter"). Thus, his sentence of "Life imprisonment on count 3 and 10-years to a maximum of 25 years on count 4 to run consecutively to count 3" computed as "20 to Life consecutive to 10 to 25," which "translated as '30 to Life.'" (*Id.*).

Viewing this "translation" instead as an "unauthorized modification" of his sentence, Mr. Ellis claims that BOSC, which is a part of ODRC, violated his Fourteenth Amendment right to due process "by unlawfully altering his sentence from 'life imprisonment' to '30 to life.'" (ECF No. 1-1 at 1). Advancing his claim under 42 U.S.C. § 1983, Mr. Ellis requests: (1) declaratory judgment acknowledging "BOSCO's [sic] modification of Plaintiff's sentence [as] unlawful and void[;]" (2) injunctive relief "preventing further unauthorized sentence modifications[;]" (3) an order restoring Plaintiff's original sentence; and (4) compensatory and punitive damages for the alleged constitutional violations. (*Id.* at 8–9).

After filing his Complaint, Mr. Ellis filed five additional motions: a Motion for a Temporary Restraining Order (ECF No. 2), a Motion for a Preliminary Injunction (ECF No. 3), a Motion to

3

Appoint Counsel (ECF No. 5), a Motion for Immediate Release (ECF No. 7), and a Motion for a Status Update (ECF No. 14).

On July 15, 2025, the Magistrate Judge issued an R&R (ECF No. 16) recommending that Mr. Ellis's complaint be dismissed and his motions be denied as moot. (ECF No. 16 at 1–2). The R&R identifies four flaws in Mr. Ellis's Complaint. First, sovereign immunity bars his claims for compensatory and punitive damages. (*Id.* at 6–7). Second, his due process claim fails because "BOSC simply did not alter Plaintiff's murder sentence," and given that he received parole eligibility hearings after 20 years and 30 years, he suffered no due process injury. (*Id.* at 7–8). Third, his due process claim is time-barred given the two-year statute of limitations for Section 1983 claims. (*Id.* at 8–9). Accordingly, the R&R recommends that Mr. Ellis's remaining motions be denied as moot. (*Id.* at 9).

In response, Mr. Ellis filed timely objections to the R&R (ECF No. 24). Mr. Ellis argues that his due process claim should survive dismissal because it is "fact-specific" and identifies the alleged due process violation and the alleged parties responsible. (*Id.* at 2). He reiterates his claim that BOSC modified his sentence by computing it as "30 to life" because "20 to life" was not a permissible sentence for aggravated murder under Ohio Rev. Code § 2929.03, and that BOSC concealed this modification and obstructed his appeal. (*Id.* at 3). Additionally, Mr. Ellis claims that he suffered a due process injury in the form of: (1) the lack of a judicial hearing prior to the alleged modification of his sentence; (2) the lack of notice at the time of the alleged modification; (3) the inability to appeal; and (4) the lack of an administrative remedy to "challenge BOSCO's [sic] authority to alter a judicial sentence." (*Id.* at 5).

Mr. Ellis also challenges the R&R's determination that his claim is time-barred for three reasons. First, he suggests that accrual did not start in 2015 since he "did not know BOSCO [sic]

4

had modified his sentence until well after his 2015 parole board hearing, and even then, the modification was not disclosed in a way that allowed legal challenge." (*Id.*). Second, Mr. Ellis claims BOSC "concealed the modification and deprived him of the ability to appeal." (*Id.* at 6). He calls this "state-created obstruction, which justifies equitable tolling." (*Id.*). Third, Mr. Ellis claims that the alleged modification is "an ongoing deprivation" under the continuing violation doctrine. (*Id.*). Finally, Mr. Ellis refutes the recommended denial of his five motions. (*Id.* at 2).

Mr. Ellis also filed various other motions after the R&R: (1) a Supplemental Declaration and Motion for Emergency Relief (ECF No. 19); (2) a Motion for Equitable Relief (ECF No. 21); (3) a Motion to Toll the Statute of Limitations (ECF No. 25); (4) a Motion to Compel Production of sentencing records (ECF No. 26); (5) a Motion for Leave to File an Amended Complaint (ECF No. 27); (6) a Motion for a Status Update (ECF No. 28); (7) a Motion for Leave to Refile Civil Rule 8(A) Statement (ECF No. 29); (8) an Emergency Motion to Appoint Counsel (ECF No. 30); (9) a Motion to Confirm Acceptance of Amended Complaint (ECF No. 31); (10) a Motion to Preserve Right to Amend Complaint to Add Defendants Upon Discovery (ECF No. 32); and (11) a Motion to Accept and Recognize Amended Complaint as Operative Pleading (ECF No. 34).

This Court now considers Mr. Ellis's Complaint, the R&R, Mr. Ellis's Objections, and the sixteen pending motions.

## II.     STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation, the district court must review "*de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(c). After this review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

While the district court must consider all timely objections, the "filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to complete failure to object." *Slater v. Potter*, 28 Fed. App'x 512, 513 (6th Cir. 2002) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Likewise, "a general objection to the entirety of a magistrate's report, without specifying a single issue of contention" does not meet the requirement for proper objections. *Howard v. Sec'y of Health & Hum. Servs*, 932 F.2d 505, 509 (6th Cir. 1991). Instead, they must "be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller*, 50 F.3d at 380 (citing *Howard*, 932 F.2d at 509). The objections of a petitioner appearing *pro se* are construed liberally and held to less stringent standards than documents drafted by lawyers. *Cf. Erickson v. Parus*, 551 U.S. 89, 94 (2007) (per curiam).

### III.  LAW AND ANALYSIS

This Court reviews the R&R's recommendation for the dismissal of Mr. Ellis's Section 1983 claim and the denial of his remaining motions as moot. Additionally, this Court considers Mr. Ellis's motions filed after the R&R. To begin, this Court assesses sovereign immunity with regards to Mr. Ellis's claim against ODRC and considers his Motion to Amend the Complaint to add individual defendants. Second, this Court analyzes Mr. Ellis's Section 1983 claim for declaratory and preliminary injunctive relief. Third, this Court considers Mr. Ellis's remaining motions.

#### A.  Sovereign Immunity & Amended Complaint

As a threshold matter, Mr. Ellis cannot bring a Section 1983 claim against the named defendant ODRC because ODRC is not a "'person' subject to suit under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983."); *Peeples v. Dep't of Rehab. & Corr.*, 1995 WL 445714, at *1 (6th Cir. 1995) (holding that dismissal

6

of a suit against ODRC was proper because "a state is not a 'person' subject to suit under § 1983"). Accordingly, Mr. Ellis's Section 1983 claim against ODRC is improper.

Additionally, Mr. Ellis's Section 1983 claim faces a second sovereign immunity hurdle. As the R&R (ECF No. 16) noted, Mr. Ellis's claims for compensatory and punitive damages must be dismissed given that sovereign immunity bars Section 1983 claims for monetary damages. (ECF No. 16 at 6–7); *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (the exception to sovereign immunity outlined in *Ex Parte Young*, 209 U.S. 123 (1908) only applies in "claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations."). In response to the R&R, Mr. Ellis did not object to the denial of these claims for monetary and punitive damages, even conceding that they are barred by sovereign immunity. (ECF No. 24 at 4). Without objection, Mr. Ellis's claim against ODRC for compensatory and punitive damages under Section 1983 is **DISMISSED.**

Given these bars, Mr. Ellis filed a Motion for Leave to Amend the Complaint (ECF No. 27), wherein he sought to remove ODRC and add seven individual defendants. Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule "reinforces the principle that cases 'should be tried on their merits rather than the technicalities of pleadings." *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 937 (6th Cir. 2004). Since Rule 15 offers a "liberal policy of permitting amendments," this Court grants Mr. Ellis leave to amend his complaint and add seven individual defendants. *Id.* (citing *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988). Thus, Mr. Ellis's Motion for Leave to Amend the Complaint (ECF No. 27) is **GRANTED.**

### B. Section 1983 Due Process Claim

7

Mr. Ellis's Complaint alleges that Defendants violated his due process rights when his sentence was computed by BOSC as "30 to life." (ECF No. 1-1 at 1, 6). He averred that this computation was an unlawful modification of his sentence and sought compensatory and punitive damages and declaratory and preliminary injunctive relief (*Id.* at 1). The R&R disagreed, stating "BOSC simply did not alter Plaintiff's murder sentence, impermissibly or otherwise." (ECF No. 16 at 7–8). Mr. Ellis now objects, arguing that "20 to life" was not a valid sentence for aggravated murder, so the alleged modification of his sentence to "30 to life" was unlawful. (ECF No. 24 at 3).

Mr. Ellis's Section 1983 due process claim fails for three reasons: (1) the computation of Mr. Ellis's aggregate sentence did not constitute a modification of his sentence; (2) since Mr. Ellis received a parole eligibility hearing, he suffered no deprivation of due process; and (3) Mr. Ellis's claim is time-barred by the two-year statute of limitations.

### 1. No Sentence Modification

First, the computation of Mr. Ellis's aggravated murder sentence as "20 to life" and his aggregate sentence as "30 to life" did not constitute a modification of his sentence. On the one hand, Mr. Ellis is correct to recognize that "20 to life" differs from "life imprisonment with eligibility of parole after 20 years," and some Ohio courts have held that trial sentences that vary from statutory requirements may be void. *See State v. Mack*, 2020 WL 2503935, ¶ 2, ¶ 6, ¶ 19, 2020-Ohio-2951 (Ohio Ct. App., Franklin Cty., May 14, 2020) (holding that a trial sentence of "20 years to life" was void because it differed from the statutorily required sentence of "life imprisonment with parole eligibility after serving twenty years of imprisonment"); *State v. Smith*, 2019 WL 259459, ¶ 3, ¶ 25, 2019-Ohio-155 (Ohio Ct. App., Cuyahoga Cty., Jan. 17, 2019). On the other hand, the Ohio Supreme Court in *State v. Leegrand* determined that a trial sentence of "life in prison with eligibility of parole after 15 years" was not void because any variation from the statutory requirement of

8

"fifteen years to life" was a "distinction without a difference." *State v. Leegrand*, 170 Ohio St. 3d 304, ¶ 2–3, ¶ 8–9, 2022-Ohio-3623, 212 N.E.3d 869, 870–71 (Ohio 2022). Regardless of whether variation voids a trial sentence or not, the key distinction between these cases and Mr. Ellis's case is that Mr. Ellis does not challenge his trial sentence as different from the statutory requirement. Rather, his challenge lies with any variation between his trial sentence and the computation of his aggregate sentence.

Variation between a trial sentence and the computation of an aggregate sentence does not constitute a modification because it is merely a "distinction without a difference." *State ex rel. Stokes v. Ohio Dep't Rehab. & Corr.*, 2023 WL 2033370, ¶ 19, 2023-Ohio-468 (quoting *Leegrand*, 170 Ohio St. 3d 304, ¶ 5). For example, in *Stokes*, the defendant was sentenced to three consecutive life sentences for rape, 10-to-25 years for aggravated robbery, and 10-to-25 years for kidnapping, with each sentence running consecutively. *Id.* ¶ 2. To determine the aggregate minimum sentence, BOSC calculated that "pursuant to *Ohio Adm.Code 5120-2-03*, the aggravated robbery and kidnapping sentences were diminished to a 15-year aggregate minimum sentence, and that pursuant to *Ohio Adm.Code 5120-2-10*, Stokes became eligible for parole consideration for each life sentence after serving ten full years in prison." *Id.* ¶ 3. Thus, BOSC calculated that the defendant would become eligible for parole consideration after serving an aggregate minimum sentence of 45 years. *Id.* Calculating the life sentences in ten-year increments for the purpose of clarifying parole eligibility did not constitute a modification of the defendant's sentence. *Id.* ¶ 20 ("We disagree with Stokes that his three life sentences have been modified by adding a ten-year minimum term to each sentence and therefore increased his aggregate minimum sentence by 30 years. He was properly sentenced in accordance with the law, and that sentence has not been modified."). Thus, BOSC's calculations "did not change the trial court sentence in any way" because all that the calculations did was

"provide some hope to inmates that they will be released. Defining a sentence as ten years to life has the effect of setting as part of the sentence the minimum term from which parole eligibility can be computed. The language amounts to a 'distinction without a difference.'" *Id.* ¶ 19 (quoting *Leegrand*, 170 Ohio St. 3d 304, ¶ 5).

Any variation between BOSC's computation of Mr. Ellis's aggregate minimum and the trial sentence was also a distinction without a difference that did not constitute a modification of Mr. Ellis's sentence. Just as the *Stokes* defendant was eligible for parole after ten years for each life sentence, Mr. Ellis was eligible for parole after 20 years for his life sentence, given that life imprisonment for aggravated murder "is presumed to be a sentence of life imprisonment with parole eligibility after twenty years…." Ohio Admin. Code 5120-2-10(B). Further, just as BOSC treated the life sentences in ten-year increments for the purpose of calculating an aggregate sentence in *Stokes*, BOSC treated Mr. Ellis's life sentence in a twenty-year increment. Thus, BOSC performed the same simple addition in *Stokes* as in the present case; three ten-year increments plus a 15-year minimum equaled an aggregate minimum of 45 years to life. Here, a 20-year increment plus a ten-year minimum equaled 30 years to life. Calculating this aggregate minimum did not impose a new minimum term or modify Mr. Ellis's sentence. Therefore, BOSC and its personnel did not "unlawfully alter" Mr. Ellis's sentence, nor did Defendants violate his due process rights.

### 2. *No Due Process Injury*

Secondly, Mr. Ellis's Section 1983 due process claim fails because he suffered no due process injury. The Fourteenth Amendment prohibits states from "depriv[ing] individuals of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Establishing a due process violation requires two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant

upon that deprivation were constitutionally sufficient." *Ky. Dep't Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

As the R&R noted, Mr. Ellis received due process as evidenced by his two parole eligibility hearings after 20 and 30 years of incarceration. (ECF No. 16 at 8). Given that his aggravated murder sentence specified parole eligibility after 20 years, Mr. Ellis "received consideration for release at the earliest possible time under the statute on which he relies." (*Id.*). Without any other identification of process due to Mr. Ellis, the R&R determined his due process claim failed. (*Id.*).

In his objection, Mr. Ellis states that he suffered four due process injuries: (1) "No judicial hearing was held prior to BOSCO's [sic] modification"; (2) "No notice was provided…at the time of modification"; (3) "No opportunity to appeal the modified sentence was available because the change was concealed and not reflected in the original journal entry"; and (4) "No administrative remedy existed to challenge BOSCO's [sic] authority to alter a judicial sentence." (ECF No. 24 at 5).

Given that BOSC's computation of Mr. Ellis's aggregate minimum sentence did not constitute a modification of the trial sentence, Mr. Ellis's allegation of due process injuries necessarily fails. First, no hearing was necessary because no modification occurred. Second, there was no notice requirement given that there was no modification, and further Mr. Ellis was made aware of the aggregate minimum sentence in the 2015 parole hearing Decision and Minutes. (ECF No. 16 at 5). Third, without a modification, there was nothing to appeal. Also, Defendants did not conceal the aggregate minimum sentence since it was listed on the 2015 parole hearing Decision and Minutes. (ECF No. 16 at 5). Finally, without a modification or error, there was nothing to remedy. Therefore, because Mr. Ellis suffered no due process injury, his due process claim fails.

11

*3. Statute of Limitations*

Third, Mr. Ellis's due process claim fails because his claim is time-barred by the two-year statute of limitations for Section 1983 claims as set by Ohio law. *Browning v. Pendelton*, 869 F.2d 989, 992 (6th Cir. 1989). While Ohio law determines the statute of limitations, federal law determines the date of accrual. *Ruiz-Bueno v. Maxim HealthCare Servs.*, 659 Fed. App'x 830, 833 (6th Cir. 2016). The statute of limitations begins to run when a person "knows or has reason to know that the act providing the basis of her injury has occurred." *Ruiz-Bueno*, 659 F. App'x. at 833.

The R&R determined that Mr. Ellis's knowledge of BOSC's computation dated "at least as far back as his 2015 parole hearing." (ECF No. 16 at 9). Thus, the R&R concluded that the accrual date began in 2015, making Plaintiff's complaint that was filed in 2025, well beyond the two-year statute of limitations. (*Id.*). In response, Mr. Ellis raises three objections. First, he suggests the accrual date started after 2015 since he "did not know BOSCO [sic] had modified his sentence until well after his 2015 parole hearing[.]" (ECF No. 24 at 5). Second, Mr. Ellis argues that the alleged modification constituted state-created obstruction that "justifies equitable tolling." (*Id.* at 6). Third, Mr. Ellis argues that the continuing violation doctrine applies because the "sentence modification is not a one-time event—it is an ongoing deprivation." (*Id.*).

Mr. Ellis's first objection fails because he does not offer any detail or any evidence that indicates he was not aware or at least should not have been aware of the alleged modification in 2015. Specifically, Mr. Ellis had reason to know of this alleged modification because he was advised of BOSC's "30 to Life" computation at his 2015 parole hearing. Mr. Ellis was again informed of such by BOSC in a letter mailed to him on October 30, 2018. (ECF No. 1-1 at Exhibit "October 30, 2018 BOSC Letter"). Even if this Court considered the 2018 letter to be the date of accrual, Mr. Ellis's claims would still be untimely. Construing Mr. Ellis's objection liberally, he fails to provide

12

support that the statute of limitations only began to run within two years of 2025. Thus, this objection fails.

Further, given that BOSC's computation did not constitute a modification of Mr. Ellis's sentence, nor was it a state-created obstruction or an ongoing deprivation, Mr. Ellis's second and third objections also fail. Therefore, the two-year statute of limitations serves as the third reason why Mr. Ellis's due process claim fails. Accordingly, Mr. Ellis's objection is **OVERRULED,** and his Section 1983 due process claim is **DISMISSED.**

### C. Plaintiff's Motions

Mr. Ellis has raised fifteen other motions besides his Motion for Leave to Amend the Complaint that are now before this Court. Most of these are predicated on claims that this Court has already rejected. For example, his Motion for a Temporary Restraining Order (ECF No. 2), Motion for a Preliminary Injunction (ECF No. 3), Motion for Immediate Release (ECF No. 7), Motion for Equitable Relief (ECF No. 21), and Motion to Toll the Statute of Limitations (ECF No. 25) all hinge on the allegedly "unauthorized alteration" of Mr. Ellis's sentence. (ECF Nos. 2 at 2; 3 at 2; 7 at 1; 21 at 1; 25 at 2). Given that no such "unauthorized alteration" occurred, these motions are **MOOT**.

Additionally, given the dismissal of Mr. Ellis's claims, his Motions to Appoint Counsel (ECF Nos. 5; 30), Motions for a Status Update (ECF Nos. 14; 28), and Motion to Compel Production of Sentencing Records (ECF No. 26) are **MOOT**. This Court's grant of Mr. Ellis's Motion for Leave to Amend the Complaint (ECF No. 27) also renders Mr. Ellis's Motion for Leave to Refile Civil Rule 8(A) Statement (ECF No. 29), Motion to Confirm Acceptance of Amended Complaint (ECF No. 31), Motion to Preserve Right to Amend Complaint to Add Defendants Upon Discovery (ECF No. 32), and his Motion to Accept and Recognize Amended Complaint as Operative Pleading (ECF No. 34) as **MOOT**.

Finally, Mr. Ellis also filed a Motion for Emergency Relief (ECF No. 19), alleging that "prison officials conducted a shakedown of [his] assigned housing area/unit. During this search, staff possessed and damaged [his] own personal typewriter, which [he] had been using to prepare legal motions, conduct research, and correspond with the Courts." (ECF No. 19 at 2). Mr. Ellis claimed that this destruction to his typewriter violated his First Amendment right to access the courts and his Fourteenth Amendment right because the destruction was "retaliatory conduct." (*Id.*). This Court considers Mr. Ellis's First Amendment and Fourteenth Amendment claims in turn.

"The First Amendment guarantees that 'prisoners have a constitutional right of access to the courts' that is 'adequate, effective, and meaningful.'" *Bell v. Washington*, 2025 U.S. (quoting *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977)). While this right includes the provision of some materials such as a "paper and pen to draft legal documents," "notarial services," and "stamps" for indigent inmates, this does not extend to typewriters. *Bounds*, 430 U.S. at 824–25; *Looper v. Gibson*, 63 Fed. App'x 877, 878–79 (6th Cir. 2003) ("[T]he refusal of the Tennessee Department of Correction to provide Looper with a typewriter and a copier has not…prejudiced Looper's ability to press forth his legal claims.").

Here, Mr. Ellis does not allege that he was denied paper, pen, or any other materials included under the right to access the courts. He claims a "lack of Law Library Time [sic]" but includes as an exhibit a calendar with the times that the law library is available for inmates. (ECF No. 19 at 2, Exhibit "Library Schedule"). Because the evidence supports Mr. Ellis's access to the law library, and his typewriter is not a recognized material under his First Amendment right to access the courts, Mr. Ellis's First Amendment claim fails.

Turning to Mr. Ellis's Fourteenth Amendment retaliation claim, "[t]o state a claim for retaliation, a plaintiff must allege that '(1) [he] engaged in protected conduct; (2) an adverse action

14

was taken against [him]…; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct.'" *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Here, Mr. Ellis alleges that he engaged in the protected conduct of pursuing legal action. He also alleges that adverse action was taken against him in the form of the destruction of his typewriter. Mr. Ellis does not, however, allege that the Defendants were the ones to conduct the "shakedown" or damage his typewriter. (ECF No. 19 at 2). Rather, Mr. Ellis states that "prison officials" and "staff" were the perpetrators. (*Id.*). If Mr. Ellis seeks to hold Defendants Harold May and George Frederick, the past and present wardens, responsible for the actions of prison staff, then he would require a theory of respondeat superior. This theory, however, is unavailable in Section 1983 claims. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("A defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis."). Without named perpetrators as Defendants, Mr. Ellis's Fourteenth Amendment claim fails. Given that this Motion fails to identify First or Fourteenth Amendment grounds under Section 1983 to support relief, Mr. Ellis's Motion for Emergency Relief (ECF No. 19) is **DENIED.**

## IV. CONCLUSION

Plaintiff's Objection (ECF No. 24) is **OVERRULED,** and this Court **ADOPTS** the Magistrate Judge's R&R (ECF No. 16). Plaintiff's claims are **DISMISSED.** Additionally, Plaintiff's Motion for Leave to Amend the Complaint (ECF No. 27) is **GRANTED,** and Plaintiff's Motion for Emergency Relief (ECF No. 19) is **DENIED.** Plaintiff's remaining Motions (ECF Nos.

2, 3, 5, 7, 14, 21, 25, 26, 28, 29, 30, 31, 32, 34) are **DENIED as Moot.** The Clerk is **DIRECTED**

to detach Plaintiff's First Amended Complaint (ECF No. 27-1), and file it separately on the docket.

      **IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: January 27, 2026**